## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **THE UNITED STATES OF AMERICA FOR THE USE AND BENEFIT OF ANDREWS MARINE SERVICES, INC.,**     **Plaintiff**<br><br>     **v.**<br><br>**UNITED SURETY AND INDEMNITY COMPANY**     **Defendant** | **Civil No. 04-1135(HL)** |

## MAGISTRATE-JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, The United States of America for the Use and Benefit of Andrews Marine Service, Inc. (hereafter "Andrews Marine") brings this claim against United Surety and Indemnity Company (hereafter "United Surety"), seeking monies pursuant to the Miller Act, 40 U.S.C. §§ 3131-34[1] for monies allegedly owed in relation to a public works job (**Docket  Nos. 1, 8, 21**). Andrews Marine also raises a supplemental state claim pursuant to 26 P.R. Laws Ann. § 2716b and 31 P.R. Laws Ann. § 3018 alleging that the defendant acted in bad faith with regard to its claim.   Andrews Marine moves for summary judgment contending there is no issue as to any material fact and that judgment should be entered in its favor (**Docket No. 24**).   United Surety opposes the motion and also seeks partial summary judgment on the issue of the bad faith action (**Docket No. 30**).  A reply and sur-reply were also filed (**Docket Nos. 35, 38**).

The case was referred to the undersigned on January 21, 2005, for full pretrial management and report and recommendation on all dispositive motions filed (**Docket No. 40**).

---

[1]Formerly 40 U.S.C. §§270a-270e, revised and renumbered onAugust 21, 2002, at Pub. L. 107-217.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Andrews Marine filed this lawsuit on February 19, 2004.  The original complaint sought recovery solely pursuant to the Miller Act, 40 U.S.C. §§ 3131-34 (**Docket No. 1**).  The complaint was subsequently amended and a supplemental state claim was added, alleging that United Surety acted in bad faith by failing to make payment and settle the Andrews Marine claim (**Docket No. 8**).

In its motion for summary judgment Andrews Marine set forth its "Statement of Uncontroverted Facts", with some of those facts being opposed by United Surety and some of the facts undisputed (**Docket Nos. 25, 29**).  United Surety also submitted its own "additional material facts not in controversy" (**Docket No. 29**).  While Andrews Marine filed a reply to United Surety's opposition, Andrews Marine did not admit, deny or qualify the facts submitted by United Surety.  Consequently, in accordance with the Local Rules of this District, the facts as submitted by United Surety are deemed admitted.  *See* L.Cv.R. 56a(e), (f).

L.R.V. Environmental, Inc., (hereafter "LRV") was the general contractor for a federal public works job known as the "Modification for Improvement of the Environment to La Esperanza Península Cataño, Puerto Rico" (hereafter "the Project"), Contract No. DACW17-02-C-0028. *Pl's Fact No. 1*.  LRV that performs various types of construction work and on September 27, 2002, it entered into a contract with the U.S. Army Corps of Engineers (hereafter "USCOE") for the aforementioned Project.  *Def.'s Fact No. 1*.  The contract between the USCOE and LRV was for environmental improvements at the La Esperanza Península (**Docket No. 29**, Ex. 1).

A provision of the contract required the contractor to perform surveys to support the amount of removed material claimed in its invoices for progress payments.  *Def.'s Fact No. 10*.

United Surety provided and posted a payment bond on the Project, Bond No. 0284112. *Pl.'s Fact No. 3*.  United Surety is an insurance company registered in Puerto Rico and it issues payment and performance bonds for construction projects, including federal projects.  *Pl.'s, Def.'s Fact No. 4*.

Andrews Marine[2] was a subcontractor to the Project and it provided labor and materials to the bonded project as a direct privity contractor to the principal on the LRV bond.  *Pl.'s Fact No. 1*.   Andrews Marine alleges that despite the fact that LRV received funds from the United States government, it failed to pay the total  monies owed to Andrews Marine for the work it performed on the Project.  As a result,  Andrews Marine seeks payment pursuant Bond No. 0284112.

The contract between Andrews Marine and LRV called for Andrews Marine, as the subcontractor, to perform dredging and excavation work for the construction project.  *Def.'s Fact No. 2*.   Article 6 of the contract provided that Andrews Marine would be paid $382,500 for dredging work and $45,000 for clearing and grubbing (**Docket No. 24**, Pl.'s Ex. B-2).  A change order to the subcontract added $50,079 for rip rap (**Docket No. 24**,  Pl.'s Ex. C).

Annex "C" of the subcontract included certain specific conditions, including one that required  Andrews Marine to dredge 51,000 cubic yards of material from the construction site, to perform the mobilization, installation and demobilization of the equipment, and to perform

---

[2]Milton Andrews Figueroa is the President and Chief Executive Officer of Andrews Marine (**Docket No. 24**, Milton Andrews Figueroa).

surveys before, during and after for proper invoicing[3]. *Def.'s Fact No. 2.*  Andrews Marine refused

to perform any of the surveys as required in the subcontract.  *Def.'s Fact No. 9.*   As a result, LRV

was required to perform these surveys in order to properly invoice the USCOE for the dredging

work performed.  *Def.'s Fact No. 9.*   The cost of the surveys totals $17,972.00.  *Def.'s Fact No.*

*9.*

       During the course of the construction project LRV submitted certification of progress

payments.   The certification for progress payment No. 11 provided that:

> (1) The amounts requested are only for performance in accordance with the
> specifications, terms and conditions of the contract;
> (2) Payments to subcontractors and suppliers have been made from previous
> payments received under the contract, and timely payments will be made from the
> proceeds of the payment covered by this certification, in accordance with the
> subcontract agreements and the requirements of Chapter 38 of Title 31, United
> States Code; and
> (3) This request for progress payments does not include any amounts which the
> prime contractor intends to withhold or retain from a subcontractor or supplier in
> accordance with the terms and conditions of the subcontract.

*Pl.'s Fact No. 6.*

       Due to unforseen events caused by Hurricanes Fabian and Isabel in September 2003, the

USCOE reduced the total amount of material to be removed from the project from 51,000 cubic

yards to 42,842.50 cubic yards.  *Def.'s Fact No. 7.*   Thereafter, on December 29, 2003, LRV sent

a letter to the USCOE and agreed that the total amount of dredge material was 42.842.50 cubic

yards[4]. *Pl.'s Ex. E.*  Additionally, LRV's payment estimate for contract performance for the period

October 1, 2003, through November 30, 2003, reflected an excavation estimate with the same

---

[3]A calculation of the amount paid for dredging (i.e. $382,500) and the amount of material to be removed (i.e.
51,000 cubic yards) indicates that Andrews Marine would be paid $7.50 per cubic yard of material removed.

[4]The letter makes no reference to LRV's subcontractors.

number of cubic yards[5].  *Pl.'s Ex. G.*     Also, the United States issued a "Payment Estimate-Contract Performance" on December 29, 2003, wherein it approved payment to LRV in the amount of $428,425 for the excavation and placement of 42.842.50 cubic yards of material (**Docket Nos. 21, 23**, para. 13).

The construction work site was divided into three areas for purposes of performance of the contract.  *Def.'s Fact No. 3*.  Andrews Marine performed all dredging and excavation work in Areas 1 and 2, but in Area 3 it only removed material during the time frame of February 24 to March 13, 2003.  *Def.'s Fact No. 3*.     Subsequent to March 13, 2003, LRV performed all the excavation and sand movement in area 3. *Def.'s Fact No. 4*.

As determined by a survey, the volume to be removed in Area 3 was 15,900 cubic yards.  *Def.'s Fact No. 5*.     After Andrews Marine completed its excavation activity in Area 3, LRV requested a survey to determine the volume that had been excavated in that area by Andrews Marine.  *Def.'s Fact No. 6*.   The survey indicated that Andrews Marine had excavated 5,884.96 cubic yards in Area 3, leaving 10,015.04 cubic yards in Area 3 to be removed by LRV.  *Def.'s Fact No. 6*.  LRV contracted with Mr. Ramadés Osorio for the removal of the remaining material in area 3 and with Gamalier González Trucking for transportation of the removed material to the deposit site.  *Def.'s Fact No. 4*.   Andrews Marine disputes that there were other subcontractors who substituted for it and removed material from the site (**Docket No. 35**).   Andrews Marine refers to the deposition testimony of Omayra Valencia to support its position, but did not provide to the Court the referenced deposition excerpts.

---

[5]The payment estimate makes no reference to LRV's subcontractors.

On January 23, 2004, Andrews Marine submitted Certification No. 5 to LRV claiming the total amount of $225,592.50 as owing. *Def.'s Fact No. 8*. According to United Surety, this is an incorrect amount inasmuch as USCOE reduced the amount of material to be dredged or removed from the project and Andrews Marine did not remove all material from Area 3. *Def.'s Fact No. 8*. Neither party submitted a copy of Certification No. 5 to the Court.

Also according to United Surety, as a result of the reduction amount of dredged material by the USCOE, the material removed by Andrews Marine totaled 32,827.46 cubic yards, and at the agreed rate of $7.50 per cubic yard it had earned $246,205.95 for the dredging work as provided in the subcontract. *Def.'s Fact No. 7*. In its motion for summary judgment Andrews Marine claims that it is owed the contract price of $482,425 for the dredged material of 42.842.50 cubic yards (**Docket No. 24**, para. 11).

The parties agree that the general contractor made partial payment to Andrews Marine in the sum of $228,604.25. *Pl.'s Fact No. 7.* United Surety calculates the amount owing to Andrews Marine for dredging as $89,298.45 (i.e amount earned by Andrews Marine $246,204.95 less the amount already paid $156,907.50). *Def.'s Fact No. 8*. Andrews Marine calculates the amount it is owed as $187,793.25 (i.e. amount paid by USCOE to LRV $416,397.50 less the amount paid to Andrews Marine by LRV $228,604.25) (**Docket No. 24**, para. 11). This amount conflicts with the amount requested in Certification No. 5 (i.e. $225,592.50), although it is unknown if Certification No. 5 contains requests for payment for items other than for dredging.

On February 4, 2004, Andrews Marine presented its claim of $225,592.50 to the United Surety under the payment bond. *Def.'s Fact No. 11*. Next, United Surety asked LRV its position regarding Andrews Marine's claim. *Def.'s Fact No. 12*. LRV advised United Surety of

its position.  *Def.'s Fact No. 12*.   It indicated that Andrews Marine's claim for $225,592.50 was considered incorrect on the basis that the amount of contracted dredge material was reduced to 43,016.00 cubic yards and that its records indicated that Andrews Marine had dredged 33,000.96 cubic yards of material[6] (**Docket No. 29**, Def.'s Ex. letter dated Feb. 10, 2004).  In making this determination LRV considered that following a survey it had been determined that LRV had removed 10,015.04 cubic yards of material that Andrews Marine was originally scheduled to remove.  *Id.*  In the letter LRV also indicated that Andrews Marine had refused to perform the survey as required in the contract and that the cost of conducting the same totaled $17,972.00. *Id.*

An investigation was conducted by United Surety following the receipt of the claim from Andrews Marine (**Docket No. 29**, Ex. 4, Dep. José Luis Rosario-Ramírez, p. 10).  It was verified that a bond had been issued by United Surety.  *Id.*  Also, the attorney for Andrews Marine was notified that an investigation would be conducted by United Surety and that he would be informed regarding its outcome.  *Id.*  United Surety notified LRV that it had received the claim from Andrews Marine and advised LRV that it needed to present to United Surety its defense(s) or comments regarding the claim.  *Id.* at p. 11.  In response, LRV provided the letter dated February 10, 2004, referred to hereinabove.  *Id.* at p. 12.  According to United Surety it had 15 days to respond to counsel for Andrews Marine regarding its Notice of Claim, but before it had a chance to do so, it received the summons and complaint in the case at bar.  *Id.* at p. 13.  As a

---

[6]It is noted that the February 10, 2004, letter contains a dredge amount different than that calculated in Defendant's Statement of Fact No. 7.  United Surety's Fact No. 7 indicates that Andrews Marine was responsible for a total dredge amount of 32,827.46 cubic yards as opposed to the February 10, 2004, letter which refers to a total dredge amount of 33,000.96 cubic yards.

result, United Surety referred the matter to its attorneys to answer the complaint and its usual

process for evaluating a claim[7] did not take place inasmuch as the process stopped once United

Surety received a complaint.  *Id.* at pp. 13-15.  As a result, United Surety did not verify LRV's

allegations or review the contract specifications with respect to the scope of work performed by

Andrews Marine.  *Id*. at p. 14.  United Surety did not attempt to contact the USCOE to obtain

information regarding the scope of work done by Andrews Marine nor has it done so following

the institution of this lawsuit.  *Id.* at p. 15.

United Surety has deposited $71,346.25 with the Clerk of the Court. *Def.'s Fact No. 7,*

*Docket Nos. 13, 18*.

## II.    ANALYSIS

### A.    Legal Standard

Summary judgment is appropriate when the evidence before the court shows that "there

is no genuine issue as to any material fact and that the moving party is entitled to a judgment as

a matter of law. Fed.R.Civ.P. 56(c)." *Seaboard Surety Co. v. Greenfield Middle Sch. Bldg.*

*Comm.,* 370 F.3d 215, 218 (1st Cir. 2004).   When ruling on a motion for summary judgment,

the court "must scrutinize the evidence in the light most agreeable to the nonmoving party, giving

that party the benefit of any and all reasonable inferences. *Cox v. Hainey,* 391 F.3d 25, 27 (1st

Cir. 2004).  An issue is "genuine" for purposes of summary judgment if "the evidence is such that

---

[7]United Surety explained its normal processing of a claim. (**Docket No. 29**, Ex. 4, Dep. José Luis Rosario-Ramírez, p. 14).  Immediately after receiving a Notice of Claim the principal is fully within his rights to present defenses and allegations against the claim, by acknowledging, denying or advising that there are controversies regarding same. Once an answer is received from the principal it is given to the claimant.  Therein the claimant is advised that a meeting will take place with all the parties - the claimant, the principal and the surety company - to talk and discuss the claim and the differences among all parties.  *Id.*

a reasonable jury could return a verdict for the nonmoving party," and a "material fact" is one which "might affect the outcome of the suit under the governing law." *Hayes v. Douglas Dynamics, Inc.,* 8 F.3d 88, 90 (1st Cir. 1993) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

The nonmovant bears "the burden of producing specific facts sufficient to deflect the swing of the summary judgment scythe." *Mulvihill v. Top-Flite Golf Co.,* 335 F.3d 15, 19 (1st Cir. 2003). Those facts, typically set forth in affidavits, depositions, and the like, must have evidentiary value; as a rule, "[e]vidence that is inadmissible at trial, such as inadmissible hearsay, may not be considered on summary judgment." *Vázquez v. López-Rosario,* 134 F.3d 28, 33 (1st Cir. 1998). Finally,  it is well settled that "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252.

## B.    The Miller Act

Andrews Marine argues that it is entitled to summary judgment for its claim brought pursuant to the Miller Act, 40 U.S.C. §§ 3131-34, in that it supplied materials, it remains unpaid for the same, the USCOE is satisfied that Andrews Marine performed its contract and the jurisdictional requisites have been met.  United Surety responds that Andrews Marine is not entitled to the entire amount it claims because it did not perform all the material removal at the project, and further because United Surety is entitled to recoup from Andrews Marine the costs of surveys that Andrews Marine failed to perform as required by the subcontract.  Andrews Marine responds that the allegations of United Surety regarding a dispute over a subcontract and the right of setoff are not before the court inasmuch as LRS submitted certifications for payment to the

USCOE and that LRS never informed the government of said dispute.  Andrews Marine also

argues that the Miller Act does not permit a contractor or his surety to a right of setoff based upon

a requisition certified by the contractor.

The Miller Act requires a general contractor performing a contract valued at over $100,000

on any public construction project to obtain a performance bond and payment bond for the

protection of persons supplying labor and material in the prosecution of the work on the project.

40 U.S.C. § 3131; *See also United States for use and benefit of Water Works Supply Corp. v.*

*George Hyman Constr. Co.,* 131 F.3d 28, 31 (1st Cir. 1997).  Persons who have "furnished labor

or material" to a public construction project may sue to recover from the payment bond any

amount owed to them. 40 U.S.C. § 3131.  Therefore, the purpose of the Miller Act is "to protect

persons supplying labor and material for the construction of federal public buildings in lieu of the

protection they might receive under state statutes with respect to the construction of nonfederal

buildings." *GE Supply v. C & G Enterprises, Inc.*, 212 F.3d 14, 17 (1st Cir.  2000) (quoting

*United States for Benefit and on Behalf of Sherman v. Carter,* 353 U.S. 210, 216 (1957); *see also*

*F.D. Rich Co., Inc. v. United States for use of Indus. Lumber Co., Inc.*,  417 U.S. 116, 122 (1974).

The Act is "highly remedial" and entitled to a "liberal construction."  *Id.* (citing *J.W. Bateson Co.,*

*Inc. v. United States ex rel. Bd. of Trustees,* 434 U.S. 586, 594 (1978)).

To establish a claim under the Miller Act,  a labor or material supplier must prove that the:

(1) labor or materials were supplied in prosecution of the work provided in the contract; (2)

supplier has not been paid; (3) supplier had a good faith belief that the labor or materials were

intended for the specified work; and (4) the jurisdictional requisites of the Miller Act have been

met.  *United States Dep't of Navy for benefit of Andrews v. Delta Contractors Corp.,* 893 F.Supp.

125, 130 (D.P.R. 1995); *United States on behalf of Polied Envtl. Services, Inc. v. Incor Group, Inc.,* 238 F.Supp.2d 456, 460 (D.Conn. 2002).

Andrews Marine intertwines the issues of no right to recoupment by United Surety and requisitions or certifications for payment made by LRV to argue that said issues warrant the entry of summary judgment in its favor.   With regard to the certifications for payment made by LRV, Andrews Marine relies upon the Prompt Payment Act and various sections of the Code of Federal Regulations to argue that these certifications impose a duty upon United Surety to pay it in accordance with the terms of the contract between it and LRV.  Andrews Marine's reliance upon such act, however, does not aid in its effort to obtain summary judgment.

The Prompt Payment Act requires that construction contracts with governmental agencies shall include a clause requiring the general contractor to pay subcontractors for satisfactory performance within seven days of the general contractor's receipt of payment from the agency. *See* 31 U.S.C. §§ 3905(b)(1).  It does not impose a fiduciary duty on a general contractor as to funds received from a governmental agency from which a subcontractor is supposed to be paid. *See In re Thomas*, 255 B.R. 648 (Bankr. D.N.J. 2000).

Indeed, the legislative history of the Prompt Payment Act suggests that its purpose is not to create a statutory obligation for prime contractors to pay their subcontractors.  *Transamerica Premier Ins. Co. v. Ober,* 894 F.Supp 471 n. 15 (D.Me. 1995).   Rather Congress enacted the Prompt Payment Act to "provide incentives for the Federal Government to pay its bills on time." *United States ex rel. Virginia Beach Mech. Services, Inc. v. SAMCO Const.*, 39 F.Supp.2d 661, 677 (E.D.Va. 1999) (citations omitted).   According to another Congressional report  the Act's "protections apply only when there is no dispute relating to a contractor's performance in

accordance with the terms and conditions of the contract." *Id.*   Additionally, "[i]f a dispute exists, a contractor is not entitled to payment [under the Act]. . .until the dispute is resolved." *Id.*   The provisions in Prompt Payment Act requiring general contractor's certification that it had paid subcontractors do not "impose a statutory obligation [on general contractor] to make prompt payment," and only "enable a subcontractor to pursue remedies under its subcontract).   *See Transamerica Premier Ins. Co. v. Ober,* 894 F.Supp. 471, 479-80 (D.Me. 1995).

The foregoing indicates that the Prompt Payment Act does not support Andrews Marine's position that it is entitled to payment of the amount it claims it is owed merely because LRV requested certifications for payment under the Act.

Andrews Marine's position that United Surety has no right of recoupment also is not well-taken.   Section 3133 of the Miller Act provides that "every person that has furnished labor or material in carrying out work provided for in a contract for which a payment bond is furnished . . . may bring a civil action on the payment bond for the amount unpaid at the time the civil action is brought and may prosecute the action to final execution and judgment for the amount.   40 U.S.C.  §  3133.   The former language of the Miller Act permitted a supplier to recover, not the full contract price, but the "sums justly due him."  40 U.S.C. § 270b(a) (2001).

Under the provisions of the Miller Act before it was amended the First Circuit Court of Appeals had determined that the statute's requirement of determining the sums "justly due" a supplier, made recoupment an appropriate defense in Miller Act cases. *United Structures of Am., Inc. v. G.R.G. Eng'g, S.E.,* 9 F.3d 996, 999 (1st Cir. 1993).  In its analysis, the Appellate Court distinguished recoupment from a setoff, noting that a setoff has less bearing on whether a particular sum is "justly due" to the claimant, since setoff functions mostly as a convenient method

of dealing with mutual, unrelated debts. *Id.* The appellate court noted that the "the policies

underlying the Miller Act seem to permit recoupment. The Act is intended "to protect those whose

labor and materials go into public projects, but this "protect[ion]" does not include payments to

which the supplier's underlying contract does not entitle him." *Id.* (internal citations omitted).

More so, the appellate court in *United Structures of Am., Inc.* stated that "[n]or do we understand

how permitting a general contractor to reduce a supplier's claim by the amount that the general

contractor spent remedying the supplier's failure to comply with his contract somehow "unduly

burdens" the supplier's Miller Act rights.  On the contrary, disallowing recoupment would seem

to give the supplier "rights" to which his contract does not entitle him." *Id.* at 1000 (internal

citations omitted).  Hence, a surety company standing in the shoes of the contractor is entitled to

recoup the value of any defective or incomplete performance. *See United Structures of America,*

*Inc. v. G.R.G. Eng'g, S.E.,* 9 F.3d 996 (1st Cir. 1993) (holding that the aim of recoupment "would

seem to match the statute's requirement of determining the sums 'justly due' a supplier, making

recoupment an appropriate defense in Miller Act cases").

The First Circuit Court of Appeal's holding determining that a surety company, such as

United Surety, may stand in the shoes of contractor, such as LRV, and is  entitled to recoup the

value of any defective or incomplete performance from a subcontractor, is binding precedent on

this court.  Andrews Marine has cited no First Circuit cases to the contrary and its position

regarding no right to recoupment is unavailing.

Finally, there is a factual dispute as to the whether Andrews Marine supplied the materials

and performed the work as provided by the subcontract between it and LRV.  Andrews Marine

supplied an affidavit asserting that it performed the work.  In the other hand, United Surety

provided documentation supporting its allegation that Andrews Marine did not perform the work as provided in the contract.  This discrepancy creates a factual dispute as to the amount owed Andrews Marine and makes summary judgment on behalf of Andrews Marine on the issue of the Miller Act inappropriate.

Inasmuch as there remains a genuine issue of material fact, IT IS RECOMMENDED that Plaintiff's Motion for Summary Judgment as to the Miller Act claim be DENIED.

## C.    Bad Faith

Andrews Marine supplemental claim is that United Surety, as an insurer, acted in bad faith when dealing with Andrews Marine claim.  Andrews Marine relies upon 31 P.R. Laws Ann. § 3018 and 26 P.R. Laws Ann § 2716a and § 2716b to support its position.

Both Andrews Marine and United Surety move for summary judgment on this issue. Andrews Marine argues that United Surety did not respond to its claim in a timely fashion, it acted with reckless indifference or with a lack of reasonable basis for denying the claim, and it negligently delayed the investigation of the claim.  Andrews Marine contends that United Surety had until March 20, 2004, to tender a response to the claim, but instead of doing so, over 60 days later, filed a motion with the Court to deposit undisputed funds with the Court. *See Docket No. 13 Motion to Deposit Funds, filed May 24, 2004.*    United Surety argues that the evidence in this case does not warrant a finding of conscious wrongdoing by it, and relies upon the evidence in the case to support its position.   It further argues that the plaintiff prematurely filed its complaint and this filing constituted just cause for United Surety not adjusting and immediately paying the insurance claim.

Initially, the undersigned notes that the question of whether a bad faith denial of an insurance claim is an issue of contract or tort is a matter of state law that has not yet been addressed by the courts of Puerto Rico. *See Uffner v. La Reunion Francaise*, *S.A.,* 244 F.3d 38 n. 3 (1st Cir. 2001); *Noble v. Corporación Insular De Seguros,* 738 F.2d 51, 53 (1st Cir. 1984) (deciding that such an action would fall under either Civil Code Article 1802, 31 L.P.R.A. §§ 5141 (tort), or Article 1504, 31 L.P.R.A. §§ 3018 (contract)).   *But see  Event Producers Inc.  v. Tyser & Co.,* 854 F.Supp. 35, 38-39 (D.P.R.1993) (concluding that the Puerto Rico Supreme Court would probably follow the trend in most states and allow a tort action for bad faith refusals to pay insurance).

Nonetheless, pursuant to 31 P.R. Laws Ann. § 3018, a party found to have incurred in "fraud, negligence, or delay" or having acted contrary to its contractual obligations shall be liable "for the losses and damages caused thereby."   Under the Puerto Rico Insurance Code, an insurance company has the duty to confirm or deny coverage of a claim within a reasonable term after the loss statement is completed. 26 P.R. Laws Ann.  § 2716a(5). The Code specifies the period of time constituting a "reasonable term."   It requires that the investigation, adjustment and resolution of any claim shall be made in the shortest reasonable period of time within the first 45 days after all the documents needed to resolve said claim have been submitted to the insurer. The first period may only be extended under extraordinary circumstances, but such extension shall never exceed the term of 90 days from the date the claim was submitted.  26 P.R. Laws Ann. § 2716b(1).

The facts before the Court are that on February 4, 2004, Andrews Marine presented its claim of $225,592.50 to the United Surety  under the payment bond.  United Surety then asked

LRV its position regarding Andrews Marine's claim and received from LRV a letter outlining its position dated February 10, 2004.   United Surety also verified that a bond had been issued by United Surety and notified the attorney for Andrews Marine that an investigation would ensue. Before United Surety had a chance to complete its investigation it received a summons and complaint instigating this lawsuit.   The complaint was filed on February 19, 2004, and summons was issued as to United Surety on February 20, 2004 (**Docket Nos. 1, 2**).   The summons was returned as executed and showed service on February 20, 2004 (**Docket No. 3**).  Once United Surety was served it referred the matter to its attorneys to answer the complaint and its usual process for evaluating a claim did not take place.

*Event Producers, Inc. v. Tyser & Co. N. Am., Inc.,* 854 F.Supp. 35 (D.P.R. 1993), *aff'd* 37 F.3d 1484 (1st Cir. 1994) is dispositive of this matter.  In *Event Producers* the insureds alleged bad faith in the denial of their claim. The applicable criterion was described as conduct on the part of the defendant which denoted "either conscious wrongdoing, reckless indifference or the lack of a reasonable basis for denying a claim." *Id.* at 39. The Court placed particular "emphasis on the wilful nature of the insurer's failure to pay on the claim". *Id.*  The reasonableness of the defendant's actions was examined in relation to the duties imposed by the Puerto Rico Insurance Code, 26 P.R. Laws Ann. §§ 2716a and 2716b to duly investigate claims. The Court found in favor of the defendants concluding that their "behavior was appropriate and reasonable under the circumstances, and not at all reckless" inasmuch as the filing of a civil complaint provided reason for not immediately paying the claim.  *Id.* at 40.

In the same manner, United Surety's action in not immediately investigating and paying the claim Andrews Marine  was an appropriate and reasonable action under the circumstances,

and not what one would consider reckless, negligent or unreasonable.  Indeed, rather, than

patiently wait for the investigation to conclude, Andrews Marine prematurely filed suit against

United Surety which in turn caused United Surety to refer the matter to its attorneys.

In line with *Event Producers*, the undersigned finds that there is no genuine issue as to the

bad faith of United Surety.  The record simply does not support such a finding.  Accordingly, it

is RECOMMENDED that Plaintiff's motion for summary judgment on the issue of bad faith be

DENIED and Defendant's Cross-Motion for Summary Judgment on the issue of bad faith be

GRANTED.

## III.     CONCLUSION

Based upon the foregoing analysis, it is therefore  **RECOMMENDED** as follows:

– that Plaintiff 's Motion for Summary Judgment (**Docket No. 24**) be **DENIED**; and,

– that Defendant's Cross-Motion for Summary Judgment (**Docket No. 30**) be

**GRANTED**.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule

72(a) of the Local Rules of Court.  Any objections to the same must be specific and must be filed

with the Clerk of Court **within ten (10) days** of its receipt.  Rule 72(d), Local Rules of Court;

Fed. R. Civ. P. 72(b).  Failure to timely file specific objections to the Report and Recommendation

is a waiver of the right to review by the District Court.  *United States v. Valencia-Copete*, 792 F.2d

4 (1st Cir. 1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980).  The

parties are advised that review of a Magistrate-Judge's Report and Recommendation by a District

Judge does not necessarily confer entitlement as of right to a *de novo* hearing and does not permit

consideration of issues not raised before the Magistrate-Judge.  *Paterson-Leitch v. Massachusetts*

*Elec.*, 840 F.2d 985 (1st Cir. 1988).

**SO RECOMMENDED.**

At San Juan, Puerto Rico, this 31st day of May, 2005.


S/**AIDA M. DELGADO-COLON**
**U.S. Magistrate-Judge**